IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-264-D

| | | |
|---|---|---|
| JAMEY KENNEDY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| WILLIE ROWE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On May 18, 2023, Jamey Kennedy ("Kennedy" or "plaintiff") filed a complaint in this court against (1) Maria Fuentes ("Fuentes"), individually and in her official capacity as a Wake County Deputy Sheriff; (2) Wake County; and (3) Willie Rowe ("Rowe"), individually and in his official capacity as Sheriff of Wake County (collectively, "defendants"). See [D.E. 1]. Kennedy alleges two violations of the Fourth Amendment of the United States Constitution under 42 U.S.C. § 1983 (against all three defendants); a violation of Article 1, Section 19 of the North Carolina Constitution (against Fuentes only); false imprisonment (against Fuentes only); trespass to chattel (against Fuentes only); and a violation of Monell v. Department of Social Services, 436 U.S. 658 (1978) (against Wake County only). See id. Kennedy seeks compensatory and punitive damages. See id. On August 7, 2023, Wake County filed an answer [D.E. 9] and moved to dismiss the complaint for failure to state a claim upon which relief can be granted [D.E. 10]. See Fed. R. Civ. P. 12(b)(6). On August 17, 2023, Kennedy responded in opposition [D.E. 12]. As explained below, the court grants Wake County's motion to dismiss and dismisses Kennedy's claims against Wake County.

I.

The Wake County Sheriff's Office ("Sheriff's Office") is the primary law enforcement agency for Wake County. See Compl. [D.E. 1] ¶ 6. Willie Rowe is the elected Sheriff, and Maria Fuentes is a Deputy Sheriff. See Compl. ¶¶ 7–10. In November 2022, Fuentes received an anonymous drug complaint concerning Jamey Kennedy and Joseph Misuraca ("Misuraca"). See Compl. ¶¶ 11, 13–14. Based on a police report, Fuentes assumed Kennedy and Misuraca resided at 5020 Silvers Road, Raleigh, North Carolina. See id. During the week of December 26, 2022, Fuentes surveilled the residence but observed no activity other than two unknown drivers at the residence. See Compl. ¶¶ 14–15.

On January 3, 2023, Fuentes and other deputies returned to the residence, and Fuentes knocked on the door. See Compl. ¶¶ 16–18. Jane Kennedy, Kennedy's mother, answered the door, propped the door open, and confirmed Kennedy was home. See id. at ¶¶ 18–19. Officers then entered the residence without a warrant, and it is disputed whether Jane Kennedy consented to the entry. See id. at ¶ 21. Once inside, Fuentes entered Kennedy's bedroom, where Fuentes smelled marijuana and found paraphernalia. See id. at ¶¶ 22–26. Fuentes and the other deputies then searched the entire residence. See id. at ¶¶ 27, 29. During the search, deputies found and confiscated a .38 pistol from a locked safe in Kennedy's bedroom. See id. at ¶¶ 27–30. During the search, deputies also damaged Kennedy's bedroom furniture. See id. at ¶ 28.

While the deputies were searching the residence, Misuraca arrived at the residence in a vehicle. See id. at ¶ 32. Fuentes saw Misuraca stuffing an unknown item between the seat and door of the vehicle. See id. Upon approaching the vehicle and observing a small plastic bag on the vehicle's floorboard, Fuentes searched the vehicle without a warrant. See id. at ¶ 33. Fuentes found cocaine. See id. Following this search, deputies arrested Misuraca and charged him with several

2

crimes, including possession of a firearm by a felon for the .38 pistol found in Kennedy's bedroom. See id. at ¶ 36. Kennedy alleges that the deputies eventually obtained a search warrant to search Kennedy's residence, but the search warrant did not include the safe in Kennedy's bedroom or the vehicle. See id. at ¶¶ 29, 34–37. The Sheriff's Office remains in possession of the pistol seized from Kennedy's bedroom. See id. at ¶ 38. Kennedy was not a felon on January 3, 2023, or otherwise legally prohibited from possessing the pistol. See id. at ¶ 31.

II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[] [her] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

3

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint[,] and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." Id. (quotation omitted); see Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). Additionally, a court may take judicial notice of public records. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

III.

When a municipal entity is sued under section 1983—directly or through an official-capacity suit—the plaintiff must plausibly allege that a "policy or custom" attributable to the municipal entity caused the violation of the plaintiff's federally protected rights. See, e.g., Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 410 (1997); Hafer v. Melo, 502 U.S. 21, 25 (1991); Kentucky v. Graham, 473 U.S. 159, 166 (1985); Monell, 436 U.S. at 690–94; King v. Rubenstein, 825 F.3d 206, 223 (4th Cir. 2016); Santos v. Frederick Cnty. Bd. of Comm'rs, 725 F.3d 451, 469–70 (4th Cir. 2013); Robinson v. Best, No. 4:21-CV-44, 2023 WL 5616172, at *12–13 (E.D.N.C. Aug. 30, 2023); Adams v. New Hanover Cnty. Det. Ctr., No. 5:16-CT-3020, 2017 WL 7513347, at *3 (E.D.N.C. June 30, 2017) (unpublished), aff'd sub nom. Adams v. New Hanover Cnty. Det. Facility, 703 F. App'x 202 (4th Cir. 2017) (per curiam) (unpublished). A violation results from a municipal entity's "policy or

4

custom" if the violation resulted from "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or a governmental "custom." Monell, 436 U.S. at 690–91; see City of St. Louis v. Praprotnik, 485 U.S. 112, 121–22 (1988). A county may be held liable under section 1983 only "for acts for which the county has final policymaking authority." Worrell v. Bedsole, 110 F.3d 62, 1997 WL 153830, at *5 (4th Cir. 1997) (unpublished table decision); see Praprotnik, 485 U.S. at 124–25.

Whether a county has final policymaking authority on a specific issue is a question of state law. See Praprotnik, 485 U.S. at 123; Worrell, 1997 WL 153830, at *5. A court focuses on how state law allocates power and responsibility to determine this issue. See, e.g., McMillian v. Monroe County, 520 U.S. 781, 786 (1997); Knight v. Vernon, 214 F.3d 544, 552 (4th Cir. 2000); Parker v. Bladen County, 583 F. Supp. 2d 736, 739 (E.D.N.C. 2008).

The North Carolina Constitution established the "office of the sheriff." Young v. Bailey, 368 N.C. 665, 669, 781 S.E.2d 277, 280 (2016). "[S]heriffs have substantial independence from county government." Parker, 583 F. Supp. 2d at 739. County governments do not hire sheriffs or their deputies. See, e.g., id.; Little v. Smith, 114 F. Supp. 2d 437, 446 (W.D.N.C. 2000). Sheriffs are elected, and county governments do not supervise sheriffs or deputy sheriffs. Young, 368 N.C. at 669–70, 781 S.E.2d at 280. Thus, under North Carolina law, any allegations concerning personnel, training, supervision, or other law enforcement policies in the sheriff's office fall within the sheriff's policymaking authority and are not attributable to the county. Id., 781 S.E.2d at 280; see Knight, 214 F.3d at 552–53; Worrell, 1997 WL 153830, at *5; Fuller v. Dixon, No. 7:21-CV-40, 2022 WL 3328877, at *4 (E.D.N.C. Aug. 11, 2022) (unpublished); McCollum v. Robeson County, No. 5:15-CV-451, 2016 WL 3067723, at *1–2 (E.D.N.C. May 27, 2016) (unpublished); Parker, 583 F. Supp. 2d at 739–40; Little, 114 F. Supp. 2d at 446.

5

In opposition to this conclusion, Kennedy cites two cases. First, Kennedy cites Wilcoxson v. Buncombe County, where the United States District Court for the Western District of North Carolina held that the sheriff was the ultimate policymaker concerning law enforcement matters for Buncombe County, and thus the county could be held liable for the sheriff's conduct. See Wilcoxson v. Buncombe County, 129 F. Supp. 3d 308, 317 (W.D.N.C. 2014). This ruling, however, contradicts North Carolina law. See Knight, 214 F.3d at 552; Worrell, 1997 WL 153830, at *5; Fuller, 2022 WL 3328877, at *4; Parker, 583 F. Supp. 2d at 739–40; Little, 114 F. Supp. 2d at 446; Young, 368 N.C. at 669–70, 781 S.E.2d at 280.[1] Second, Kennedy cites McMillian v. Monroe County, 520 U.S. at 783, where the Supreme Court considered a county's liability and a sheriff's liability in Alabama. The analysis of Alabama law in McMillian, however, does not apply here. Whether a county has final policymaking authority on a specific issue is a question of state law, and North Carolina state law is clear. See Praprotnik, 485 U.S. at 123; Knight, 214 F.3d at 552; Worrell, 1997 WL 153830, at *5; Young, 368 N.C. at 669–70, 781 S.E.2d at 280. Thus, Wilcoxson and McMillian provide no comfort to Kennedy.

Kennedy's section 1983 claims arise out of the residence and vehicle search on January 3, 2023, in Wake County. See Compl. ¶¶ 16, 39–64, 81–88.[2] Kennedy incorrectly assumes that the Board of County Commissioners for Wake County supervises the Sheriff and the Sheriff's Office. See Compl. ¶¶ 6–7, 39–64, 81–88; cf. Young, 368 N.C. at 669–70, 781 S.E.2d at 280. The court

---

[1] In 2014, the Wilcoxson court did not have the benefit of the Supreme Court of North Carolina's decision in Young, 368 N.C. at 669–70, 781 S.E.2d at 280. The Wilcoxson decision conflicts with Young.

[2] Kennedy brings claims under both section 1983 and Monell. Monell, however, is not a cause of action. See Monell, 436 U.S. at 691. Rather, Monell stands for the proposition that municipalities are persons under section 1983 and can be sued under section 1983. See id.

6

need not accept Kennedy's incorrect legal conclusion. See Iqbal, 556 U.S. at 678–79; Twombly, 550 U.S. at 555. Wake County does not supervise or have final policymaking authority over the Sheriff or the Sheriff's Office. See, e.g., Young, 368 N.C. at 669–70, 781 S.E.2d at 280. Kennedy has failed to plausibly allege "that the constitutional violation was undertaken to effectuate an official policy or custom of the county;" therefore, Kennedy's claims against Wake County fail. Evans v. Onslow County, No. 5:16-CT-3267, 2017 WL 1900274, at *2 (E.D.N.C. May 8, 2017) (unpublished); see Johnson v. Allen, 416 F. Supp. 3d 550, 557 (E.D.N.C. 2018). Thus, Kennedy has failed to state a claim against Wake County, and the court dismisses Wake County as a defendant.

IV.

In sum, the court GRANTS defendant Wake County's motion to dismiss [D.E. 10] and DISMISSES WITH PREJUDICE Wake County as a defendant. Plaintiff may proceed with her claims against the remaining defendants.

SO ORDERED. This 10 day of October, 2023.

JAMES C. DEVER III
United States District Judge