IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-264-D

| | |
|---|---|
| JAMEY KENNEDY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WILLIE ROWE, et al., )<br>)<br>Defendants. )<br>) | **ORDER** |

On May 18, 2023, Jamey Kennedy ("Kennedy" or "plaintiff") filed a complaint against (1) Maria Fuentes ("Fuentes"), individually and in her official capacity as a Wake County Deputy Sheriff; (2) Wake County; and (3) Willie Rowe ("Rowe"), individually and in his official capacity as Sheriff of Wake County (collectively, "defendants"). See [D.E. 1]. Kennedy alleges two violations of the Fourth Amendment of the United States Constitution under 42 U.S.C. § 1983 (against all three defendants); a violation of Article I, Section 19 of the North Carolina Constitution (against Fuentes only); false imprisonment (against Fuentes only); trespass to chattel (against Fuentes only); and a violation of Monell v. Department of Social Services, 436 U.S. 658 (1978) (against Wake County only). See id. Kennedy seeks compensatory and punitive damages. See id.

On August 7, 2023, Wake County moved to dismiss the complaint for failure to state a claim [D.E. 10]. See Fed. R. Civ. P. 12(b)(6). On October 10, 2023, the court granted Wake County's motion to dismiss and dismissed Wake County as a defendant [D.E. 16].

On January 26, 2024, Rowe and Fuentes moved to dismiss the complaint [D.E. 26] and filed a memorandum in support [D.E. 28]. See Fed. R. Civ. P. 12(b)(2), (4), (6), (7). Kennedy failed to respond. As explained below, the court dismisses Rowe as a defendant and dismisses Kennedy's Article 1, Section 19, false imprisonment, and trespass to chattel claims. Kennedy's Fourth Amendment claims under section 1983 against Fuentes may proceed.

I.

The Wake County Sheriff's Office ("Sheriff's Office") is the primary law enforcement agency for Wake County. See Compl. [D.E. 1] ¶ 6. Rowe is the elected Sheriff, and Fuentes is a Deputy Sheriff. See id. at ¶¶ 7–10. In November 2022, Fuentes received an anonymous drug complaint concerning Kennedy and Joseph Misuraca ("Misuraca"). See id. at ¶¶ 11, 13–14. Based on a police report, Fuentes assumed Kennedy and Misuraca resided at 5020 Silvers Road, Raleigh, North Carolina. See id. During the week of December 26, 2022, Fuentes surveilled the residence but observed no activity other than two unknown drivers at the residence. See id. at ¶¶ 14–15.

On January 3, 2023, Fuentes and other deputies returned to the residence, and Fuentes knocked on the door. See id. at ¶¶ 16–18. Jane Kennedy, Kennedy's mother, answered the door, propped the door open, and confirmed Kennedy was home. See id. at ¶¶ 18–19. Officers then entered the residence without a warrant, and the parties dispute whether Jane Kennedy consented to the entry. See id. at ¶¶ 21–22. Once inside, Fuentes entered Kennedy's bedroom, where Fuentes smelled marijuana and found paraphernalia. See id. at ¶¶ 22–26. Fuentes and the other deputies then searched the entire residence. See id. at ¶¶ 27, 29. During the search, deputies found and confiscated a .38 pistol from a locked safe in Kennedy's bedroom. See id. at ¶¶ 27–30. During the search, deputies also damaged Kennedy's bedroom furniture. See id. at ¶ 28.

2

While the deputies were searching the residence, Misuraca arrived at the residence in a vehicle. See id. at ¶ 32. Fuentes allegedly saw Misuraca stuffing an unknown item between the seat and door of the vehicle. See id. Upon approaching the vehicle and observing a small plastic bag on the vehicle's floorboard, Fuentes searched the vehicle without a warrant. See id. at ¶ 33. Fuentes found cocaine. See id. Following this search, deputies arrested Misuraca and charged him with several crimes, including possession of a firearm by a felon for the .38 pistol found in Kennedy's bedroom. See id. at ¶ 36. Kennedy alleges that the deputies eventually obtained a search warrant to search Kennedy's residence, but the search warrant did not include the safe in Kennedy's bedroom or the vehicle Misuraca was driving. See id. at ¶¶ 29, 34–37. The Sheriff's Office remains in possession of the pistol seized from Kennedy's bedroom. See id. at ¶ 38. Kennedy was not a felon on January 3, 2023, or otherwise legally prohibited from possessing the pistol. See id. at ¶ 31.

II.

Rowe moves to dismiss the complaint and argues that Kennedy failed to properly serve him; therefore, the court lacks personal jurisdiction over Rowe. See [D.E. 28] 7–8. A motion to dismiss under Rule 12(b)(4) challenges the sufficiency or "form" of the process itself, and a motion to dismiss under Rule 12(b)(5) challenges the sufficiency of the act of "service" of process. See Fed. R. Civ. P. 12(b)(4), (b)(5); Lee v. City of Fayetteville, No. 5:15-CV-638, 2016 WL 1266597, at *2 (E.D.N.C. Mar. 30, 2016) (unpublished), abrogated on other grounds by Wilson v. City of Jacksonville, No. 7:22-CV-198, 2023 WL 4760512, at *1 (E.D.N.C. July 18, 2023) (unpublished). Stated differently, a Rule 12(b)(4) motion to dismiss objects to a defect in the content of the documents served, while a Rule 12(b)(5) motion to dismiss objects to a defect in the act (or lack) of delivery. See, e.g., 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure

3

§ 1353 (3d ed. 2004). For example, a typical Rule 12(b)(4) challenge alleges that the entity named in the summons is different from the entity named in the complaint. A typical Rule 12(b)(5) challenge alleges that the process was delivered by a person incapable of serving process (e.g., a party), to a person or entity incapable of receiving service (e.g., a minor), or that the service was delivered in an improper way (e.g., via first-class mail). See, e.g., Stokes v. JPMorgan Chase Bank, NA, No. 8:11-CV-2620, 2012 WL 527600, at *5–6 (D. Md. Feb. 16, 2012) (unpublished). Plaintiff bears the burden of establishing proper service of process. See Mylan Lab'ys., Inc. v. Azko, N.V., 2 F.3d 56, 60 (4th Cir. 1993); Dalenko v. Stephens, 917 F. Supp. 2d 535, 542 (E.D.N.C. 2013).

Service rules ensure due process and personal jurisdiction over a defendant. Service of process is not a mere formality, and courts should not overlook procedural deficiencies even if actual notice occurred. See, e.g., McDaniel v. Greyhound Lines, Inc., No. 3:08-CV-130, 2008 WL 2704774, at *4–5 (W.D.N.C. July 7, 2008) (unpublished); Shaver v. Cooleemee Vol. Fire Dep't, No. 1:07-CV-175, 2008 WL 942560, at *2 (M.D.N.C. April 7, 2008) (unpublished); Hoyle v. United Auto Workers Loc. Union 5285, 444 F. Supp. 2d 467, 474 (W.D.N.C. 2006).

When a plaintiff sues a defendant in both his individual and official capacities, the plaintiff must serve the summons on the defendant in both capacities. See Washington v. Cedar Fair, L.P., No. 3:22-CV-244, 2023 WL 1456294, at *4 (W.D.N.C. Feb. 1, 2023) (unpublished); Buchanan v. JumpStart S.C., No. 1:21-cv-385, 2022 WL 443299, at *3 (D.S.C. Feb. 14, 2022) (unpublished); Allen v. Coffey, No. 5:20-CV-144, 2021 WL 3684247, at *1 (E.D.N.C. Aug. 18, 2021), aff'd, No. 21-1934, 2022 WL 34152 (4th Cir. Jan. 4, 2022) (per curiam) (unpublished); see also Kernea v. City of Charlotte, No. 3:22-CV-659, 2023 WL 6410702, at *2–3 (W.D.N.C. Sept. 29, 2023) (unpublished). A plaintiff may not serve a defendant in his individual capacity by "leaving process

4

at an individual defendant's place of business." Washington, 2023 WL 1456294, at *4 (quotation omitted).

On September 12, 2023, Kennedy filed a proposed summons for Rowe in his official capacity only. See [D.E. 14-1]. On September 14, 2023, the court issued the proposed summons to Rowe in his official capacity only. See [D.E. 15] 2. Accordingly, Kennedy failed to serve Rowe in his individual capacity.

Where the plaintiff fails to comply with procedural requirements for proper process or service of process, a court may not exercise personal jurisdiction over the defendant. See Koehler v. Dodwell, 152 F.3d 304, 306 (4th Cir. 1998); McDaniel, 2008 WL 2704774, at *5; Shaver, 2008 WL 942560, at *3; Adams v. GE Money Bank, No. 1:06-CV-227, 2007 WL 1847283, at *3 (M.D.N.C. June 25, 2007) (unpublished). Thus, this court lacks personal jurisdiction over Rowe in his individual capacity.

As for Kennedy's section 1983 claims against Rowe in his official capacity, Kennedy only seeks monetary relief and not injunctive relief. Kennedy, however, does not plausibly allege a section 1983 claim for compensatory damages against Rowe in his official capacity. See, e.g., Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989); Rizzo v. Goode, 423 U.S. 362, 377 (1976); Andrews v. Daw, 117 F.3d 1413, 1997 WL 375096, at *1 (4th Cir. 1997) (per curiam) (unpublished table decision); Cromer v. Brown, 88 F.3d 1315, 1332 (4th Cir. 1996). Kennedy also cannot recover punitive damages from Rowe in his official capacity. See, e.g., Crain v. Butler, 419 F. Supp. 2d 785, 794 (E.D.N.C. 2005). Accordingly, this court dismisses all claims against Rowe in his official capacity and dismisses Rowe as a defendant.

III.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[] [her] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

"Determining whether a complaint states a plausible claim for relief . . . [is] a context specific task that requires the reviewing court to draw on judicial experience and common sense." Iqbal, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint does not suffice. Id.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d, 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs.

6

Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." Id. (quotation omitted); see Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). Additionally, a court may take judicial notice of public records. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

North Carolina law applies to Kennedy's Article 1, Section 19, false imprisonment, and trespass to chattel claims. For those claims, this court must predict how the Supreme Court of North Carolina would rule on any disputed state-law issue. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co., 433 F.3d 365, 369 (4th Cir. 2005). First, the court looks to opinions of the Supreme Court of North Carolina. See Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from that court, this court may consider the opinions of North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation and citation omitted). In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there is persuasive data that the highest court would decide differently." Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013) (quotation omitted); see Hicks ex rel. Feiock v. Feiock, 485 U.S. 624, 630 & n.8 (1988). Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506

7

F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); see Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

A.

In counts one and two, Kennedy alleges a Fourth Amendment search and seizure claim under 42 U.S.C. § 1983. See Compl. ¶¶ 39–64. "To state a claim under [section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); see Philips, 572 F.3d at 180. Additionally, a section 1983 plaintiff must plausibly allege the personal involvement of a defendant. See, e.g., Iqbal, 556 U.S. at 676–77; Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–94 (1978); Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985).

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see City of Escondido v. Emmons, 586 U.S. 38, 42–44 (2019) (per curiam); Kisela v. Hughes, 584 U.S. 100, 103–08 (2018) (per curiam); District of Columbia v. Wesby, 583 U.S. 48, 62–63 & n.7 (2018); Hernandez v. Mesa, 582 U.S. 548, 554 (2017); Ziglar v. Abbasi, 582 U.S. 120, 150–51 (2017); Camreta v. Greene, 563 U.S. 692, 707 (2011); Pearson v. Callahan, 555 U.S. 223, 236 (2009); King v. Riley, 76 F.4th 259, 264–68 (4th Cir. 2023); Sharpe v. Winterville Police Dep't, 59 F.4th 674, 682–84 (4th Cir. 2023); Burns-Fisher v. Romero-Lehrer, 57 F.4th 421, 424 (4th Cir. 2023); Tobey v. Jones, 706 F.3d 379, 385 (4th Cir. 2013). Qualified immunity protects "all but the plainly incompetent or those who

8

knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986); see Kisela, 584 U.S. at 103–04.

In analyzing qualified immunity, the court asks (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right," and (2) "whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct." Pearson, 555 U.S. at 232 (cleaned up); see Wood v. Moss, 572 U.S. 744, 757 (2014); Knibbs v. Momphard, 30 F.4th 200, 214 (4th Cir. 2022); Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir. 2011); Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir. 2010). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (cleaned up); see Rivas-Villegas v. Cortesluna, 595 U.S. 1, 4–5 (2021) (per curiam); King, 76 F.4th at 265; Sharpe, 59 F.4th at 682–84. Although a case need not be directly controlling, "existing precedent must have placed the statutory or constitutional question beyond debate." al-Kidd, 563 U.S. at 741; see Rivas-Villegas, 595 U.S. at 4–6; King, 76 F.4th at 266–68; Sharpe, 59 F.4th at 682–84.

To determine whether an official's conduct violates clearly established law, a court must first specifically define the right. See, e.g., City of Tahlequah v. Bond, 595 U.S. 9, 12–13 (2021) (per curiam). Then, based on that specifically defined right, the court must determine whether existing precedent placed the statutory or constitutional question "beyond debate." Kisela, 584 U.S. at 104 (quotation omitted). "It is not enough that a rule be suggested by then-existing precedent; the rule's contours must be so well defined that it is clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." Bond, 595 U.S. at 12 (quotation omitted); see Wesby, 583 U.S. at 63. An official is entitled to qualified immunity "unless existing

9

precedent 'squarely governs' the specific facts at issue." Kisela, 584 U.S. at 104 (quotation omitted); see Wesby, 583 U.S. at 63–66; Mullenix v. Luna, 577 U.S. 7, 13 (2015) (per curiam).

The Supreme Court has "not yet decided what precedents—other than [its] own—qualify as controlling authority for purposes of qualified immunity." Wesby, 583 U.S. at 66 n.8; see Kisela, 584 U.S. at 103–08; Taylor v. Barkes, 575 U.S. 822, 825–27 (2015) (per curiam); City & Cnty. of S.F. v. Sheehan, 575 U.S. 600, 613–14 (2015); Carroll v. Carman, 574 U.S. 13, 16–20 (2014) (per curiam). In the Fourth Circuit, "existing precedent" includes precedent of the United States Supreme Court, the Fourth Circuit, and the highest court of the state in which the action arose. See Doe ex rel. Johnson, 597 F.3d at 176. It also includes "a consensus of persuasive authority from other jurisdictions." Sharpe, 59 F.4th at 683.

In Pearson, the Supreme Court held that the qualified-immunity analysis need not proceed in a particular sequence, and that "[t]he judges of the district courts and the courts of appeals [may] exercise their sound discretion in deciding which of the two prongs . . . should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236; see King, 76 F.4th at 265. Qualified immunity shields a defendant if the answer to either prong is "no." See al-Kidd, 563 U.S. at 735; Miller v. Prince George's Cnty., 475 F.3d 621, 627 (4th Cir. 2007); Bostic v. Rodriguez, 667 F. Supp. 2d 591, 605–06 (E.D.N.C. 2009).

The Fourth Amendment prevents "unreasonable searches and seizures." U.S. Const. amend. IV. "An officer conducting a search is entitled to qualified immunity where clearly established law does not show that the search violated the Fourth Amendment." Pearson, 555 U.S. at 243–44 (2009); see Anderson v. Creighton, 483 U.S. 635, 641 (1987). Generally, warrantless searches are "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." Arizona v. Gant, 556 U.S. 332, 338 (2009) (quotation

10

omitted). Searches "inside a home without a warrant are presumptively unreasonable." Payton v. New York, 445 U.S. 573, 586 (1980). Nevertheless, exigent circumstances can justify a warrantless search. See Ryburn v. Huff, 565 U.S. 469, 474–77 (2012) (per curiam); Brigham City v. Stuart, 547 U.S. 398, 403 (2006); United States v. Jones, 667 F.3d 477, 484 n.8 (4th Cir. 2012). "For police officers successfully to assert the exigent circumstances doctrine, they need only possess a reasonable suspicion that such circumstances exist at the time of the search . . . in question." Figg v. Schroeder, 312 F.3d 625, 639 (4th Cir. 2002) (quotation omitted). "It is a hallmark of Fourth Amendment jurisprudence that the possibility of a threat to the safety of law enforcement officers may constitute exigent circumstances justifying a warrantless search . . . ." United States v. Legg, 18 F.3d 240, 244 (4th Cir. 1994); see Ryburn, 565 U.S. at 474; Bellotte v. Edwards, 629 F.3d 415, 422–23 (4th Cir. 2011) (collecting cases). Even when police create the exigency underlying the warrantless search, the exigent circumstances rule still applies as long as the "police do not gain entry to premises by means of actual or threatened violation of the Fourth Amendment." Kentucky v. King, 563 U.S. 452, 468–69 (2011).

Kennedy plausibly alleges that Fuentes did not have a search warrant. See Compl. ¶ 21. Kennedy also plausibly alleges that Jane Kennedy did not consent to Fuentes entering the residence. See id. Moreover, Kennedy plausibly alleges that Fuentes entered the residence where she and her mother resided and forcibly entered Kennedy's bedroom. See id. at ¶¶ 22–25. Thus, Kennedy plausibly alleges that Fuentes violated her Fourth Amendment rights. Furthermore, on January 3, 2023, Kennedy's right to not have her residence searched without a warrant or exigent circumstances was clearly established law. See Lange v. California, 141 S. Ct. 2011, 2018 (2021); Kirk v. Louisiana, 536 U.S. 635, 638 (2002) (per curiam); Payton, 445 U.S. at 586; United States v. Martinez-Fuerte, 428 U.S. 543, 561 (1976); United States v. Hill, 649 F.3d 258, 262 (4th Cir.

11

2011); Wilson v. Layne, 141 F.3d 111, 115 (4th Cir. 1998) (en banc), aff'd, 526 U.S. 603 (1999); Wallace v. King, 626 F.2d 1157, 1159 (4th Cir. 1980).

In opposition to this conclusion, Fuentes argues that Kennedy is not entitled to a legitimate expectation of privacy because Kennedy was a casual, transient visitor, not an overnight guest, in Jane Kennedy's residence. See [D.E. 28] 11; United States v. McNeal, 955 F.2d 1067, 1079 (6th Cir. 1992) (holding that a casual, transient visitor does not have a legitimate expectation of privacy in a residence); cf. Minnesota v. Olson, 495 U.S. 91, 96–97 (1990) (holding that an overnight houseguest has a legitimate expectation of privacy in a residence). Kennedy alleges, however, that Fuentes entered her bedroom and damaged her furniture. See Compl. ¶¶ 27–28. Thus, Kennedy plausibly alleges that she resided at the residence and had a legitimate expectation of privacy. See, e.g., Georgia v. Randolph, 547 U.S. 103, 113 (2006). Accordingly, Kennedy's Fourth Amendment claims under section 1983 against Fuentes may proceed.

B.

In count three, Kennedy alleges an Article 1, Section 19 claim under the North Carolina Constitution. See Compl. ¶¶ 65–69. Kennedy's procedural-due-process claim arises under the "Law of the Land" Clause of Article I, Section 19, which provides that "no person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land." N.C. Const. art. I, § 19. Absent "an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under [the North Carolina] Constitution." Corum v. Univ. of N.C., 330 N.C. 761, 782, 413 S.E.2d 276, 289 (1992).

North Carolina law "does not recognize claims for violations of the state constitution against persons sued in their individual capacities." Sheaffer v. Cnty. of Chatham, 337 F. Supp.

12

2d 709, 731–32 (M.D.N.C. 2004); see Est. of Fennell ex rel. Fennell v. Stephenson, 354 N.C. 327, 333, 554 S.E.2d 629, 633 (2001); Corum, 330 N.C. at 787–88, 413 S.E.2d at 292–93. Thus, the court dismisses Kennedy's procedural-due-process claim under the North Carolina Constitution against Fuentes in her individual capacity.

As for Kennedy's Art. 1, Section 19 claim against Fuentes in her official capacity, Kennedy brought North Carolina false imprisonment and trespass to chattels claims against Fuentes. See Compl. ¶¶ 70–80. Fuentes argues that an adequate state remedy exists under North Carolina law through false imprisonment and trespass to chattels claims. See [D.E. 28] 22. Thus, Fuentes argues that the court should dismiss Kennedy's Article I, Section 19 claim. See id.; Corum, 330 N.C. at 782, 413 S.E.2d at 289.

Kennedy failed to respond to defendants' motion to dismiss. Courts within the Fourth Circuit "agree that failing to respond to an argument constitutes an abandonment of a claim." Sawyers v. United Parcel Serv., Inc., No. 1:18-CV-1037, 2019 WL 4305771, at *3 (M.D.N.C. Sept. 11, 2019) (unpublished); see, e.g., Morgan v. Ellis, No. 3:22-CV-3, 2023 WL 3361200, at *3 (W.D.N.C. May 10, 2023) (unpublished); Ferdinand-Davenport v. Children's Guild, 742 F. Supp. 2d 772, 783 (D. Md. 2010). In any event, a false imprisonment claim or a trespass to chattels claim provides an adequate state law remedy to Kennedy. Accordingly, the court dismisses Kennedy's Article I, Section 19 claim against Fuentes in her official capacity.

C.

In count four, Kennedy alleges a false imprisonment claim. See Compl. ¶¶ 70–73. Under North Carolina law, false imprisonment is "the illegal restraint of a person against [her] will." Hemric v. Groce, 169 N.C. App. 69, 78, 609 S.E.2d 276, 283 (2005) (quotation omitted); see Fowler v. Valencourt, 334 N.C. 345, 348, 435 S.E.2d 530, 532 (1993); Black v. Clark's

13

Greensboro, Inc., 263 N.C. 226, 228, 139 S.E.2d 199, 201 (1964); Hales v. McCrory-McLellan Corp., 260 N.C. 568, 570, 133 S.E.2d 225, 227 (1963); Adams v. City of Raleigh, 245 N.C. App. 330, 334, 782 S.E.2d 108, 112 (2016); Wilkerson v. Duke Univ., 229 N.C. App. 670, 674, 748 S.E.2d 154, 158 (2013); see also Shinaberry v. Town of Murfreesboro, No. 2:17-CV-7, 2019 WL 5446712, at *8 (E.D.N.C. Oct. 23, 2019) (unpublished). To establish a false imprisonment claim, a plaintiff must prove "(1) the illegal restraint of plaintiff by defendant; (2) by force or threat of force; and (3) against the plaintiff's will." Cherry v. United Parcel Serv., Inc., No. 5:07-CV-403, 2009 WL 8641019, at *12 (E.D.N.C. Sept. 28, 2009) (unpublished) (quotation omitted), aff'd, 402 F. App'x 764 (4th Cir. 2010) (per curiam) (unpublished); see Kling v. Harris Teeter Inc., 338 F. Supp. 2d 667, 679 (W.D.N.C. 2002), aff'd, 86 F. App'x. 662 (4th Cir. 2004) (per curiam) (unpublished); Wilkerson, 229 N.C. App. at 674, 748 S.E.2d at 158. "While actual force is not required, there must be an implied threat of force which compels a person to remain where [she] does not wish to remain or go where [she] does not wish to go." West v. King's Dep't Store, Inc., 321 N.C. 698, 702, 365 S.E.2d 621, 623–24 (1988). A threat of force suffices when it "induce[s] a reasonable apprehension of force." Id. at 702, 365 S.E.2d at 624 (quotation omitted); see Hales, 260 N.C. at 570, 133 S.E.2d at 227; Hoffman v. Clinic Hosp., Inc., 213 N.C. 669, 669, 197 S.E. 161, 162 (1938) (per curiam).

Governmental immunity applies to official capacity claims under state law, and public official immunity applies to individual capacity claims under state law. Under North Carolina law, "[g]overnmental immunity is that portion of the [s]tate's sovereign immunity which extends to local governments." Wray v. City of Greensboro, 370 N.C. 41, 47, 802 S.E.2d 894, 898 (2017). "Generally, governmental immunity protects a municipality and its officers or employees sued in their official capacity for torts committed while performing a governmental function." Sellers v.

14

Rodriguez, 149 N.C. App. 619, 623, 561 S.E.2d 336, 339 (2002); see Galligan v. Town of Chapel Hill, 276 N.C. 172, 175, 171 S.E.2d 427, 429 (1970).

Generally, governmental immunity bars tort lawsuits against the governmental entity absent waiver. See Wray, 370 N.C. at 47, 802 S.E.2d at 898; Meyer v. Walls, 347 N.C. 97, 104, 489 S.E.2d 880, 884 (1997). A county or town may waive governmental immunity by purchasing insurance, but any waiver is limited to the extent of the insurance coverage. See, e.g., N.C. Gen. Stat. § 153A-435(a); Evans v. Hous. Auth., 359 N.C. 50, 57, 602 S.E.2d 668, 673 (2004); Satorre v. New Hanover Cnty. Bd. of Comm'rs, 165 N.C. App. 173, 176, 598 S.E.2d 142, 144 (2004). If "the insurance policy does not indemnify [the] defendant against the negligent acts alleged in [the] plaintiff's complaint, [the] defendant has not waived its sovereign immunity." Doe v. Jenkins, 144 N.C. App. 131, 135, 547 S.E.2d 124, 127 (2001); see Dawes v. Nash Cnty., 357 N.C. 442, 445–46, 449, 584 S.E.2d 760, 763, 765 (2003); Est. of Earley ex rel. Earley v. Haywood Cnty. Dep't of Soc. Servs., 204 N.C. App. 338, 341, 694 S.E.2d 405, 408 (2010).

The public-officer immunity standard under North Carolina law diverges from the qualified-immunity standard under section 1983. See Cloaninger ex rel. Est. of Cloaninger v. McDevitt, 555 F.3d 324, 335 (4th Cir. 2009); Bostic, 667 F. Supp. 2d at 605; Andrews v. Crump, 144 N.C. App. 68, 76, 547 S.E.2d 117, 123 (2001). Under North Carolina law,

> a public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto. The rule in such cases is that an official may not be held liable unless it be alleged and proved that his act, or failure to act, was corrupt or malicious, or that he acted outside of and beyond the scope of his duties.

Meyer, 347 N.C. at 112, 489 S.E.2d at 888 (quotation omitted). "As long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption, he is

15

protected from liability." Smith v. State, 289 N.C. 303, 331, 222 S.E.2d 412, 430 (1976). A public officer "acts with malice when [she] wantonly does that which a [woman] of reasonable intelligence would know to be contrary to [her] duty and which [she] intends to be prejudicial or injurious to another." Grad v. Kaasa, 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984). The act must be "done of wicked purpose, or . . . done needlessly, manifesting a reckless indifference to the rights of others." Id. at 313, 321 S.E.2d at 891 (quotation omitted). Unlike the objective standard under section 1983, North Carolina's public-official-immunity analysis examines the officer's subjective state of mind. See Andrews, 144 N.C. App. at 76, 547 S.E.2d at 123; see also Alford v. Cumberland Cnty., No. 06–1569, 2007 WL 2985297, at *7 (4th Cir. Oct. 15, 2007) (unpublished).

As for Kennedy's false imprisonment claim against Fuentes in her official capacity, Kennedy does not plausibly allege that Fuentes waived her governmental immunity. Accordingly, Kennedy fails to plausibly allege a false imprisonment claim against Fuentes in her official capacity.

As for Kennedy's false imprisonment claim against Fuentes in her individual capacity, Kennedy alleges that she was prevented from leaving the residence and had her property searched for several hours without a search warrant. See Compl. ¶¶ 71–72. She does not plausibly allege any force or implied threat of force. Even viewing the complaint in the light most favorable to Kennedy, Kennedy fails to plausibly allege that Fuentes falsely imprisoned her. Accordingly, the court does not address whether public official immunity applies to Fuentes and dismisses Kennedy's false imprisonment claim in count four against Fuentes in her official and individual capacities.

D.

In count five, Kennedy alleges a trespass to chattels claim. See Compl. ¶¶ 74–80. Under North Carolina law, a claim of trespass to chattels requires that the plaintiff show (1) actual or constructive possession of the personal property or chattel at the time of the trespass and (2) an unlawful, unauthorized interference or dispossession of the property by the defendant. See Fordham v. Eason, 351 N.C. 151, 155, 521 S.E.2d 701, 704 (1999); Steele v. Bowden, 238 N.C. App. 566, 575, 768 S.E.2d 47, 55 (2014); Kirschbaum v. McLaurin Parking Co., 188 N.C. App. 782, 786–87, 656 S.E.2d 683, 686 (2008).

As for Kennedy's trespass to chattels claim against Fuentes in her official capacity, Kennedy fails to plausibly allege that Fuentes's waived her governmental immunity. As for Kennedy's trespass to chattels claim against Fuentes in her individual capacity, Kennedy alleges that Fuentes searched the vehicle that Misuraca drove. See Compl. ¶ 77. Thus, she alleges that Misuraca possessed the vehicle, not herself. Even viewing the complaint in the light most favorable to Kennedy, Kennedy fails to plausibly allege that Fuentes engaged in trespass to chattels. Accordingly, the court does not address whether public official immunity applies to Fuentes and dismisses Kennedy's trespass to chattels claim in count five against Fuentes in her official and individual capacities.

IV.

In sum, the court GRANTS IN PART defendants' motion to dismiss and DENIES IN PART defendants' motion to dismiss [D.E. 26]. Defendant Rowe is DISMISSED from the action. Plaintiff may proceed with her Fourth Amendment claims under section 1983 against defendant Fuentes. The court DISMISSES all other claims against defendant Fuentes.

17

SO ORDERED. This 24 day of May, 2024.

                                                *J. Dever*
                                             JAMES C. DEVER III
                                             United States District Judge